1

2

3 UNITED STATES DISTRICT COURT

4 NORTHERN DISTRICT OF CALIFORNIA

5

6 DEBORAH M.,

Plaintiff,

Case No.  19-cv-01901-DMR

7

v.

8 **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

NANCY A BERRYHILL,

9 Re: Dkt. Nos. 16, 17

Defendant.

10

11          Plaintiff Deborah M., representing herself, moves for summary judgment to reverse the

12 Commissioner of the Social Security Administration's (the "Commissioner's") final administrative

13 decision, which found Plaintiff not disabled and therefore denied her application for benefits under

14 Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*.  [Docket No. 16 ("Pltf. Mot."), 18

15 ("Reply").]  The Commissioner cross-moves to affirm.  [Docket No. 17 ("Def. Mot.").] For the

16 reasons stated below, the court grants Plaintiff's motion, denies the Commissioner's cross motion,

17 and remands this case for further proceedings.

18 **I.      PROCEDURAL HISTORY**

19          Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits on

20 May 7, 2015, which was initially denied on August 27, 2015 and again on reconsideration on

21 December 23, 2015.  Administrative Record ("A.R.") 116-29, 131-41, 144-49, 151-56.  On February

22 16, 2016, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  A.R.

23 157-58.  ALJ Richard P. Laverdure held a hearing on May 18, 2017 and August 31, 2017.  A.R. 38-

24 98.  On October 26, 2017, the ALJ issued a decision finding Plaintiff not disabled.  A.R. 19-37.  The

25 ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease,

26 osteoarthritis of the left hip, morbid obesity, and complex regional pain syndrome.  A.R. 25.  The

27 ALJ found that Plaintiff retains the following residual functional capacity ("RFC"):

28          [T]o perform a range of sedentary work as defined in 20 CFR 404.1567(a),

> involving no ladders, ropes, or scaffolds, and only occasional use of ramps and stairs; she can occasionally balance, stoop, kneel, crouch, and crawl, and can occasionally pedal bilaterally; she must also be allowed to alternate between positions (i.e. sit, stand, or walk) while still at her workstation up to 5 minutes every 30 minutes.

A.R. 25. Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform Plaintiff's past relevant work as a personnel clerk, the ALJ concluded that Plaintiff is not disabled.

The Appeals Council denied Plaintiff's request for review on August 10, 2018. A.R. 8-13. The ALJ's decision therefore became the Commissioner's final decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Plaintiff then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II.    THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

1.    At the first step, the ALJ considers the claimant's work activity, if any. If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2.    At the second step, the ALJ considers the medical severity of the claimant's impairment(s). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

United States District Court
Northern District of California

1    is not disabled.

2        3.      At the third step, the ALJ also considers the medical severity of the claimant's

3    impairment(s).  If the claimant has an impairment(s) that meets or equals one of the listings in 20

4    C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will

5    find that the claimant is disabled.

6        4.      At the fourth step, the ALJ considers an assessment of the claimant's residual

7    functional capacity ("RFC") and the claimant's past relevant work.  If the claimant can still do his

8    or her past relevant work, the ALJ will find that the claimant is not disabled.

9        5.      At the fifth and last step, the ALJ considers the assessment of the claimant's RFC

10   and age, education, and work experience to see if the claimant can make an adjustment to other

11   work.  If the claimant can make an adjustment to other work, the ALJ will find that the claimant is

12   not disabled.  If the claimant cannot make an adjustment to other work, the ALJ will find that the

13   claimant is disabled.

14       20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

15   **III.    STANDARD OF REVIEW**

16       Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the

17   Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's

18   denial of disability insurance benefits when the ALJ's findings are based on legal error or are not

19   supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097

20   (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could

21   lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*,

22   402 U.S. 389, 401 (1971).  It is more than a mere scintilla, but less than a preponderance.  *See Saelee

23   v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted).  When performing this

24   analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating

25   a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th

26   Cir. 2006) (citation and quotation marks omitted).

27       If the evidence reasonably could support two conclusions, the court "may not substitute its

28   judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

United States District Court
Northern District of California

3

F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

The court has read and considered the entire administrative record.  For the purposes of brevity, the court cites only the facts that are relevant to its decision.

## IV.  ISSUES PRESENTED

Plaintiff argues that the ALJ erred in (1) failing to give proper weight to the medical opinion of Plaintiff's treating physician, Dr. Steven Schadendorf; (2) making a partially adverse credibility determination; (3) assessing her RFC; and (4) eliciting testimony from the VE.

## V.  DISCUSSION

### A.  Medical Opinions

#### 1.  Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient.  Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians").  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion.  *Id.*

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities.  *Reddick*, 157 F.3d at 722.  A treating physician's opinion, while entitled to more weight, is not necessarily conclusive.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons."  *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results);

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1  *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996).  If another doctor

2  contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported

3  by substantial evidence to discount the treating physician's opinion.  *Lester*, 81 F.3d at 830.  The

4  ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting

5  clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725

6  (citation omitted).  "[B]road and vague" reasons do not suffice.  *McAllister v. Sullivan*, 888 F.2d

7  599, 602 (9th Cir. 1989).  This same standard applies to the rejection of an examining physician's

8  opinion as well.  *Lester*, 81 F.3d at 830-31.  A non-examining physician's opinion alone cannot

9  constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v.*

10  *Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.

11  1984), though a non-examining physician's opinion may be persuasive when supported by other

12  factors.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by

13  "non-examining medical expert . . . may constitute substantial evidence when it is consistent with

14  other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of

15  treating physician's opinion given contradictory laboratory test results, reports from examining

16  physicians, and testimony from claimant).  An ALJ "may reject the opinion of a non-examining

17  physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d

18  1240, 1244 (9th Cir. 1998).  An opinion that is more consistent with the record as a whole generally

19  carries more persuasiveness.  *See* 20 C.F.R. § 416.927(c)(4).

20  　　　　　**2.　　　Analysis**

21  　　　　Dr. Steven Schadendorf has treated Plaintiff since February 2011, when she presented for a

22  neurological consultation.  A.R. 492.  Plaintiff began experiencing back and leg pain after a motor

23  vehicle accident in 2007.  A.R. 492.  She had a rhizotomy performed to relieve the pain, but after

24  the procedure, she "developed increasing left lateral leg pain with associated numbness and left

25  dorsiflexion weakness." A.R. 492.  The record contains Dr. Schadendorf's treating notes and three

26  medical source statements.

27  　　　　In Dr. Schadendorf's September 2013 source statement, he explained that Plaintiff

28  experiences chronic radicular pain and sensory loss at her left lower leg and foot.  A.R. 402-03.  The

pain is constant and is precipitated by lifting, activity, and sitting more than 1 hour.  A.R. 405.  He said that Plaintiff can independently initiate and sustain ambulation and does not need a cane.  A.R. 404.  She can independently initiate and sustain fine and gross movements, although she has significant limitations in lifting because of pain.  A.R. 404.  He opined that in an 8 hour workday, she can sit, stand, or walk for up to 2 hours.  A.R. 405.  She has to get up and move around every 2 hours for at least 30 minutes before she can sit again.  A.R. 405.  She can occasionally lift and carry up to 20 pounds and cannot push or pull.  A.R. 406, 408.  Dr. Schadendorf wrote that Plaintiff's pain is periodically severe enough to interfere with her attention and concentration, her impairments are likely to produce "good days" and "bad days," and that she would likely be absent from work two to three days a month as a result of her impairments.  A.R. 407-08.

Dr. Schadendorf's May 2017 source statement records Plaintiff's diagnoses as lumbar radiculopathy, bilateral lower limb complex regional pain syndrome ("CRPS"), and lumbar spondylosis.  A.R. 473.  He stated that she experiences severe intractable pain in her lower limbs, which began after her rhizotomy, and weakness in her left foot and ankle.  A.R. 473-74.  The pain is constant, sharp, and shooting, and is aggravated by sitting, lifting, shifting weight, pushing, and pulling.  A.R. 474.  He wrote that previous treatments, including lumbar sympathetic blocks and physical therapy, provided no relief or even made the pain worse.  A.R. 474.  Dr. Schadendorf opined that Plaintiff can sit, stand, or walk for less than 1 hour each in an 8 hour workday.  A.R. 475.  She cannot sit continuously, and every 15 minutes has to get up to move around for at least 15 minutes.  A.R. 475.  She can lift up to 10lbs occasionally and carry up to 5lbs.  A.R. 475.  Although Dr. Schadendorf indicated that Plaintiff does not have significant limitations in reaching, handling, or fingering, he also noted that she can rarely or never use her arms for reaching.  A.R. 476.  He wrote that her symptoms would frequently be severe enough to interfere with attention and concentration and that she would need to take unscheduled 15 minute breaks every hour.  A.R. 476.  According to the May 2017 statement, Plaintiff would likely be absent from work more than three days a month due to her impairments.  A.R. 477.

Dr. Schadendorf wrote a letter in support of Plaintiff's disability application in August 2017.  A.R. 492.  He explained that she initially presented with left lateral leg and foot pain consistent with

United States District Court
Northern District of California

1    a L5 radiculopathy.  A.R. 492.  He stated that her pain, numbness, and lower skin temperature are

2    all consistent with CRPS.  A.R. 492.  CPRS is also indicated by the development of similar pain in

3    her right leg despite the absence of a nerve root injury in that limb because people with CPRS often

4    develop similar severe pain in their opposite limb.  A.R. 492.  According to Dr. Schadendorf, the

5    prognosis from CRPS is often poor, and patients experience increasing pain and dysfunction over

6    time.  A.R. 492.  He opined that Plaintiff's activity level is severely restricted due to pain and

7    dorsiflexion weakness, and that she cannot lift more than a few pounds or sit/stand for prolonged

8    periods of time.  A.R. 492.  Dr. Schadendorf wrote that he does not expect Plaintiff to recover and

9    that he believes she cannot do fulltime competitive work.  A.R. 492.

10          Plaintiff argues that the ALJ erred in assigning little weight to Dr. Schadendorf's statements.

11   Because Dr. Schadendorf's opinions are contradicted by the other medical sources in the record, all

12   of whom assigned less restrictive limitations, the ALJ was required to provide specific and

13   legitimate reasons supported by substantial evidence to reject them.  *Lester*, 81 F.3d at 830.

14          With respect to Dr. Schadendorf's September 2013 statement, the ALJ stated that the

15   assessment was internally inconsistent and not supported by Dr. Schadendorf's own findings.  A.R.

16   29.  He pointed out that Dr. Schadendorf wrote that Plaintiff did not need an assistive device for

17   ambulation even though he opined that she could only walk 2 hours total in an 8 hour workday.

18   A.R. 29.  However, these statements are not necessarily contradictory.  The source statement and

19   the medical record indicate that Plaintiff is primarily limited by pain rather than motor deficits.  It

20   can both be true that Plaintiff does not need a cane to walk (or at least did not at the time the

21   statement was written) and that she cannot sustain walking for more than two hours because of pain.

22   The ALJ also determined that it was inconsistent for Dr. Schadendorf to indicate that Plaintiff has

23   significant limitations in repetitive reaching, handling, fingering, or lifting even though he assessed

24   no limitations in fine/gross motor skills or in Plaintiff using her arms for reaching.  A.R. 29.  The

25   ALJ somewhat mischaracterizes Dr. Schadendorf's opinion.  Although Dr. Schadendorf checked

26   "yes" to the question, "Does your patient have significant limitations in doing repetitive reaching,

27   handling, fingering, or lifting?", he also noted in the margins that "lifting exacerbates pain."  A.R.

28   404.  Thus, a fair reading of Dr. Schadendorf's answer suggests that Plaintiff is significantly limited

7

1    in lifting, but not in reaching, handling, or fingering.  *See* A.R. 404.  This is consistent with his

2    assessment indicating that Plaintiff has no limitations in fine/gross motor skills or in reaching.  A.R.

3    404.  Therefore, there are no apparent contradictions in the source statement and the ALJ erred in

4    discounting the September 2013 statement on that basis.

5         The ALJ discounted Dr. Schadendorf's May 2017 source statement on the grounds that it is

6    inconsistent with the medical evidence.  He wrote that Dr. Schadendorf's "treatment records from

7    2013 to 2015 generally reflect that the claimant's upper extremity motor strength, reflexes, and

8    coordination were all within normal limits."  A.R. 30.  It is true that Plaintiff's physical examinations

9    by Dr. Schadendorf were generally unremarkable in terms of motor strength, reflexes, and

10   coordination.  *See* A.R. 412, 416, 419, 423, 427, 431, 435, 447, 452, 479.  The ALJ also correctly

11   noted elsewhere that Plaintiff's MRI and EMG results did not show significant abnormalities.  *See*

12   A.R. 436 (observing mild ligament flavum hypertrophy throughout the lumbar spine but not

13   significant disc disease or foraminal stenosis); 438 (finding mild chronic left L5 root denervation

14   and re-innervation).  Nonetheless, the court finds that the ALJ erred in failing to consider Dr.

15   Schadendorf's opinion in light of Social Security Ruling 03-2p, which explains the Commissioner's

16   policies for evaluating CRPS (also known as Reflex Sympathetic Dystrophy Syndrome or "RSDS").

17   *Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017) ("Although Social Security Rulings do

18   not carry the 'force of law,' they are nevertheless binding on ALJs.").  According to SSR 03-2p,

19   CRPS is diagnosed through the presence of one or more characteristic symptoms, including

20   swelling, autonomic instability (e.g. changes in skin color or texture, decreased or excessive

21   sweating, skin temperature changes, or goosebumps), abnormal hair or nail growth, osteoporosis, or

22   involuntary movements of the affected region of the initial injury.  SSR 03-2p.  Dr. Schadendorf's

23   August 2017 letter explains why Plaintiff's symptoms of pain, numbness, and lower limb skin

24   temperature are consistent with CRPS.  A.R. 492.  His medical notes also record the characteristic

25   symptoms of CRPS listed above, including edema, skin temperature changes, and dry skin.  *See*

26   A.R. 412, 416, 423, 427, 435, 467.  Further, although the initial injury was to Plaintiff's left leg and

27   foot, the record documents that it spread to her right lower extremity as well, which is also

28   characteristic of CRPS.  A.R. 414, 421, 425.

United States District Court
Northern District of California

1    Relevant here, the Ruling recognizes that CRPS "most often result[s] from trauma to a single

2    extremity" but can spread to other limbs or parts of the body.  *Id.*  A defining characteristic of CRPS

3    is that "the degree of pain reported is out of proportion to the severity of the injury sustained by the

4    individual." SSR 03-2p.  Further, "conflicting evidence in the medical record is not unusual in cases

5    of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process

6    involved." *Id.*  These observations indicate that CRPS is a "disease for which objective findings

7    can be minimal." *Hunt v. Astrue*, 2009 WL 1519543, at *4 (C.D. Cal. May 29, 2009); *see also Mark*

8    *L. v. Saul*, 2019 WL 2560099, at *3 (N.D. Ind. June 21, 2019) ("[A] claimant who experiences this

9    condition will often not have the sort of objective clinical findings that would normally be expected

10    to produce the amount of pain the individual is reporting.").

11    Because clinical findings are of limited value with respect to CRPS, SSR 03-2p emphasizes

12    that the severity of the disorder can be assessed instead through "a longitudinal clinical record

13    containing detailed medical observations, treatment, the individual's response to treatment,

14    complications of treatment, and a detailed description of how the impairment limits the individual's

15    ability to function and perform or sustain work activity over time." SSR 03-2p.  Clinical records

16    from treating sources are particularly useful.  *Id.*  In the context of fibromyalgia (another chronic

17    pain disorder primarily diagnosed through pain reports rather than clinical findings), the Ninth

18    Circuit has underlined the importance of examining the entire longitudinal medical record for

19    findings consistent with the diagnosis. *See Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017).

20    In *Revels*, for example, the court found that an ALJ erred in rejecting a rheumatologist's opinion on

21    the limiting effects of fibromyalgia by focusing on imaging results rather than the signs that are

22    characteristic of that disorder, such as tender points.  *Id.*; *see also Benecke v. Barnhart*, 379 F.3d

23    587, 594 (9th Cir. 2004) (holding that the ALJ erred by "effectively requiring 'objective' evidence

24    for a disease that eludes such measurement" (alterations and citation omitted)).  The Ninth Circuit

25    also recognized that a treating physician's "specialized knowledge is particularly important with

26    respect to a disease such as fibromyalgia that is poorly understood within much of the medical

27    community," and thus a specialist's opinion merits greater weight than those of other

28    physicians.  *Revels*, 874 F.3d at 664 (internal quotation marks and citation omitted); *see also* 20

9

1    C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist

2    about medical issues related to his or her area of specialty than to the medical opinion of a source

3    who is not a specialist.").

4           In this case, Dr. Schadendorf is a neurologist who has treated Plaintiff since February 2011.

5    His opinion relates to a disorder believed to originate in dysfunction of the sympathetic nervous

6    system, and therefore he qualifies as a specialist with respect to CPRS.  *See* SSR 03-2p.  The record

7    contains extensive treatment notes recording the progression of Plaintiff's disorder and her

8    responses to various treatments.  A.R. 421, 427, 433, 474, 492.  The record also contains Dr.

9    Schadendorf's medical observations of numbness, skin temperature, swelling, and dry skin, all of

10   which are characteristic of CRPS.  *See* A.R. 412, 416, 423, 427, 435, 467, 492; *see also* SSR 03-2p.

11   Therefore, the medical evidence is consistent with a CRPS diagnosis, and Dr. Schadendorf is

12   particularly qualified to assess limitations associated with that condition.  Since the ALJ's opinion

13   focuses heavily on the diagnostic imaging results and Plaintiff's generally unremarkable physical

14   examinations, which are of limited value for the reasons explained above, it is not clear that the ALJ

15   evaluated the medical evidence in light of the unique characteristics of CRPS, Dr. Schadendorf's

16   expertise in that area, and the guidance in SSR 03-2p.  Accordingly, the medical evidence he cites

17   is not a specific and legitimate reason to discount Dr. Schadendorf's opinion.

18          The ALJ also discounted the May 2017 source statement on the basis that it contains an

19   inconsistency.  Specifically, Dr. Schadendorf answered "no" to the question "Does your patient have

20   significant limitations in reaching, handling, or fingering?" but then also indicated that Plaintiff can

21   rarely or never use her arms for reaching.  A.R. 476.  The court acknowledges that these assessments

22   appear contradictory.  However, inconsistencies in a physician's report serve as a basis for

23   discounting that physician's opinion only when the inconsistencies are material.  *See Downing v.*

24   *Barnhart*, 167 F. App'x 652, 653 (9th Cir. 2006) ("[I]t is the ALJ's responsibility to determine: (1)

25   whether there are internal inconsistencies in a physician's report; (2) whether those inconsistencies

26   are material; and (3) 'whether certain factors are relevant to discount' the physician's opinion.").

27   Given that the ALJ's discussion focuses primarily on the purported discrepancies between Dr.

28   Schadendorf's opinion and the medical evidence, which the court already found insufficient, it is

United States District Court
Northern District of California

1    not clear whether the single inconsistency in the May 2017 statement was material to the ALJ's

2    decision to discount Dr. Schadendorf's opinion as a whole or to the ultimate disability finding.  On

3    remand, the ALJ should revisit this issue after evaluating the medical evidence consistent with the

4    standards set forth above and in SSR 03-2p.

5         Finally, the ALJ discounted Dr. Schadendorf's August 2017 letter on the basis that it "did

6    not provide a functional assessment of the claimant's abilities, but is simply conclusory."  A.R. 30.

7    This reasoning is not compelling.  Although the August 2017 letter does not assess Plaintiff's

8    specific limitations, it provides context for the limitations Dr. Schadendorf previously assessed in

9    September 2013 and May 2017.  The letter explains the etiology and prognosis for Plaintiff's

10   condition, which is particularly important in evaluating CRPS since clinical findings have limited

11   value.  However, the ALJ did not err in disregarding Dr. Schadendorf's opinion that Plaintiff is

12   unable to engage in fulltime competitive work, since that issue is reserved to the Commissioner.  20

13   C.F.R. § 404.1527(d).

14        In sum, the ALJ erred in failing to evaluate the medical evidence in light of the Social

15   Security Ruling on CRPS and Ninth Circuit caselaw on chronic pain conditions.  As a result, he

16   failed to provide specific and legitimate reasons to discount Dr. Schadendorf's opinions as to

17   Plaintiff's limitations.

18        **B.    Credibility**

19             **1.    Legal Standard**

20        In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to

21   resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the

22   ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs*., 726 F.2d 1470, 1473

23   (9th Cir. 1984) (citations omitted).  An ALJ is not "required to believe every allegation of disabling

24   pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing

25   42 U.S.C. § 423(d)(5)(A)).  However, if an ALJ discredits a claimant's subjective symptom

26   testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968,

27   972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings,

28   but "must specifically identify what testimony is credible and what evidence undermines the

United States District Court
Northern District of California

11

claimant's complaints." *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2.    Analysis

The ALJ partially rejected Plaintiff's testimony as to the severity of her symptoms on the grounds that it is inconsistent with the objective medical evidence and with Plaintiff's self-reported activities of daily living. The ALJ's reasoning with respect to the medical record is the same as the court examined above with respect to Dr. Schadendorf's opinion and is rejected for the same reason. On remand, the ALJ should consider whether Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are credible in light of SSR 03-2p's guidance on evaluating CRPS, and in particular, the limited value of objective clinical findings with respect to

1    that diagnosis.

2         As for Plaintiff's activities of daily living, the ALJ wrote that Plaintiff professed an inability

3    to drive and yet drives her son to school every day, and testified that she cannot use her arms but

4    still does dishes and computer work.  A.R. 29.  The ALJ mischaracterized Plaintiff's testimony.  She

5    did not testify that she was completely unable to drive or use her arms, only that such activities

6    exacerbate her pain and that she cannot sustain them for prolonged periods.  *See* A.R. 85-86.  This

7    testimony is consistent with her reports that she drops off and picks up her son from school (2 miles

8    away) and karate practice (4 miles away) and feels pain doing any type of computer work or washing

9    dishes.  A.R. 87, 305, 440.

10        Accordingly, the ALJ did not offer clear and convincing reasons to discredit Plaintiff's

11   testimony.

12        **C.    Remaining Arguments**

13        Plaintiff argues that the ALJ erred in assessing her RFC and eliciting testimony from the VE.

14   The court does not reach this argument in light of its determination that the ALJ erred in weighing

15   the medical opinions and in assessing Plaintiff's credibility.  These errors were not harmless because

16   they could impact the ALJ's determination on other steps of the analysis.  For example, if the ALJ

17   assigns different weight to the medical opinions or credits Plaintiff's testimony, he may assess a

18   more restrictive RFC and pose different hypotheticals to the VE.

19        On remand, the ALJ should revisit these issues and make findings consistent with this order

20   and the regulations.

21   **VI.    CONCLUSION**

22        For the reasons stated above, Plaintiff's motion for summary judgment is granted and the

23   Commissioner's cross motion is denied.  The clerk shall enter judgment for Plaintiff and against

24   Defendant and close this case.

25        **IT IS SO ORDERED.**

26   Dated: December 22, 2020

27
                                                    _____
28                                                  DONNA M. RYU
                                                    United States Magistrate Judge